# DuaneMorris

FIRM and AFFILIATE OFFICES
NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
BOCA RATON
LAKE TAHOE

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

ANTHONY J. COSTANTINI
DIRECT DIAL: 212.692.1032
PERSONAL FAX: 212.692.1020
E-FAX: 212 202-4715
*E-MAIL:* ajcostantini@duanemorris.com

*www.duanemorris.com*

November 19, 2014

VIA EMAIL

Mr. Justice Newey
In the High Court of Justice
Chancery Division
Rolls Building, Royal Courts of Justice
7 Rolls Buildings, Fetter Lane
London, EC4A 1NL

Re:   **Knighthead Master Fund LP v. The Bank of New York Mellon**
        Case No. HC14B03236

Mr. Justice Newey:

My Firm represents a group of judgment creditors in a turnover proceeding captioned *Applestein v. Republic of Argentina*, **Civil Action No 02-cv-04124 (TPG)**, et al., which is presently on appeal in the United States Court of Appeals for the Second Circuit and which involves issues respecting our clients' earlier claim to the same funds that are apparently the subject of subsequent proceedings before you.

We also represent a number of both judgment and non-judgment creditors who will shortly be moving for a *pari passu* injunction, much as the one already issued and affirmed,[*] that will preclude any payment to the Exchange Bondholders unless and until a ratable payment is made to them and to other creditors with stronger claims than the Exchange Bondholders. We have recently received a Notice from counsel for a subset of the Exchange Bondholders (the "Euro Bondholders") inviting us to comment on your November 6 Opinion, and we take this opportunity to do so.

---

[*] *NML Capital, Ltd. v. Republic of Argentina*, 2011 WL 9522565 (S.D.N.Y. Dec. 07, 2011); *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 TPG, 09 Civ. 1707 TPG, 09 Civ. 1708 TPG, Doc. 371 (S.D.N.Y. Feb. 23, 2012); *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. Oct. 26, 2012); *NML Capital, Ltd. v. Republic of Argentina*, 2012 WL 5895650 (S.D.N.Y. Nov. 21, 2012); *NML Capital, Ltd. v. Republic of Argentina*, 2012 WL 5895784 (S.D.N.Y. Nov. 21, 2012); *NML Capital, Ltd. v. Republic of Argentina*, 2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. Aug. 23, 2013), cert. denied, 134 S.Ct. 2819 (U.S. June 16, 2014)

DUANE MORRIS LLP

1540 BROADWAY   NEW YORK, NY 10036-4086                                                   PHONE: 212.692.1000  FAX: 212.692.1020
DM1\5151427.2

November 19, 2014
Page 2

      In our respectful submission, the applications for declaratory relief before you constitute no more than a belated attempt by the Euro Bondholders to undermine the authority of the United States courts, and should be immediately stayed of the Court's own volition. Given that the issues in the litigation before you have either been or are being litigated before the United States courts by, *inter alia*, the Euro Bondholders, in our submission the intervention of the High Court is neither necessary nor appropriate. On that basis, we respectfully decline your invitation to formally appear at the hearings you scheduled for December 17 – 19. With all due respect, we consider that it would be more proper, and certainly more concordant with judicial comity, for you to defer to the United States courts with respect to the determination of issues that have long preceded the issues now brought before you. Before we respond to your specific questions, we provide a brief background exposition that we hope might be of assistance.

      \*    \*    \*

      The Euro Bondholders exchanged defaulted bonds previously held by them for their current bonds pursuant to Exchange Offers made by the Republic of Argentina in 2005 and 2010. These exchanges were later ruled to be illegal because they violated the *pari passu* clause in the original 1994 Fiscal Agency Agreement, which was governed by New York law. Thus, the Trust Indenture Agreements to which you refer, which are governed by English law, are the product of acts which the United States courts have determined to be illegal. Pursuant to these illegal exchanges, the Euro Bondholders have received billions of dollars in illegal benefits since 2005. It is unfortunate that they have not voluntarily returned these ill-gotten funds.

      This determination of illegality was made by the district court in 2011, and that court issued what is called the *pari passu* injunction, which precludes other further payments to any Exchange Bondholders unless and until the non-exchange bondholders are also paid. This illegality determination and the scope of the injunction were twice affirmed by the United States Court of Appeals for the Second Circuit, over the objection of the Euro Bondholders, and a petition for *certiorari*, supported by the Euro Bondholders, was denied on June 16, 2014. Notably, the Second Circuit spent considerable time addressing the "numerous" arguments of the Euro Bondholders the second time the injunction was before it. 727 F.3d at 241-45. Even more pointedly, the district court had warned that any attempted payment to Exchange Bondholders "would not involve the normal and proper situation dealt with by BNY under the indenture,..." 2012 WL 5895786 (Nov. 21, 2012). Whether one regards the Trust Indenture Agreements as abrogated, or suspended until the remedial order is obeyed, it is clear that the district court did not consider the Trust Indenture Agreements to be applicable in an injunction–violation situation.

      After the denial of *certiorari*, the Republic decided to transfer $539 Million to Bank of New York Mellon ("BNY Mellon") with instructions to pay, *inter alia*, the Euro Bondholders the interest that was due them on June 30, 2014 under the superseded Agreements. (The €225 Million referenced in your Opinion is a part of the $539 Million). BNY Mellon sought guidance from the United States District Court which had issued the injunction. That court determined that the transfer was illegal, and ultimately directed that the monies be held by BNY Mellon until

November 19, 2014
Page 3

further orders of the court – – effectively creating a constructive trust that superseded the Trust Indenture.

In particular, the court stated that the proposed payment to the Euro Bondholders was "illegal and cannot be carried out." The Euro Bondholders vigorously opposed this determination, which resulted in an Order dated August 6, 2014. This Order was appealed to the Second Circuit Court of Appeals by the Euro Bondholders, and their appeal was dismissed because a clarification of an existing Order (i.e., the *pari passu* injunction) is not appealable.

On August 7, the judgment creditors we represent moved for a turnover of the funds under long-established New York statute and precedent. This motion was denied on the grounds that the Foreign Sovereign Immunities Act prohibited the proceeding, and that determination is now on appeal. While the Euro Bondholders opposed the motion, they did not do so on the grounds relied upon by the United States District Court. If our appeal results in a determination that the District's Court's decision was incorrect, as we believe it will, the United States courts will have to determine whether the rights of judgment creditors are superior to the rights of the Euro Bondholders, irrespective of whether the Republic, which disclaimed an interest, retained a reversionary interest under Sections 11.3 and 11.4 of the Trust Indenture Agreement in the event that the Euro Bondholders are not paid from the $539 million fund. *See also* ¶ 3.5(e).

Independent of the outcome of the turnover proceeding, every other holdout creditor has an interest in the *pari passu* injunction which creates considerable leverage over the recalcitrant judgment debtor. The Euro Bondholders are, in effect, arguing that the injunction does not apply to their situation, which would narrow the scope of the injunction. Consequently, a declaration that the illegally transferred funds come under a valid English Trust will essentially abrogate the *pari passu* injunction and the determination of the illegal transfer at least as to them. Since the Euro Bondholders were represented before the United States courts on all these issues, this litigation is a clear attempt at re-argument in what the Euro Bondholders view as a more friendly forum.

\* \* \*

Turning now to the first question posed in the Opinion – – which is whether to issue a declaration that the funds are held in an English law trust – – in our respectful submission you should decline to do so. A necessary implication of the finding that the creation of the trust was the product of an illegal act is that the creation of the trust should be treated as nullity. Even if the trust were treated as an inchoate trust as a result of the United States judicial determinations, it can now be reactivated only by the ratable payment to the pre-existing bondholders. Since that payment has not occurred, the funds are in the hands of a constructive trustee subject to the direction of the United States courts. Any declaration that remotely suggests that it is a valid trust under English law would contradict the previous orders of the United States courts with respect to both the *pari passu* injunction and the more recent finding of illegal transfer. Since the Euro Bondholders have been heard in the United States courts on both issues, their attempt to

undermine is particularly egregious in your proceeding, where concepts of issue estoppel should apply.

In addition, ownership of the funds is being directly contested in a proceeding in the United States courts that was instituted prior to the institution of the proceedings before you. At the very least, it is submitted that the High Court should await the outcome of that litigation before deciding an issue that is being actively litigated in the United States courts with the Euro Bondholders being a participant, as judicial comity would suggest.

In short, all the relevant issues are issues of United States law which have been or are being adjudicated in United States courts with full participation by the aggrieved Bondholders. These Bondholders should not be afforded a second, or third, bite at the proverbial apple in the proceeding now before you.

* * *

The second declaration sought – – namely whether English conflicts of law render an order of a foreign court ineffective in varying a contract governed by English law – – inverts the main issues. Here, the questions are: (i) whether, in light of the illegality of its inception, the English-law contract was capable of being formed; and (ii) assuming that it was, whether the English-law contract was superseded by Argentina's violation of the United States injunction which effectively created a common law receivership subject to United States judicial authority.

The United States courts have already determined that the exchange which led to the Indenture Trust Agreement was a violation of a United States - law contract and that the transfer of funds was a violation of a United States injunction in cases in which the Euro Bondholders participated. The effect of these decisions on the English-law contract is also a matter of United States-law now being litigated by, among others, the Euro Bondholders.

The declaration being sought in the High Court is an attempt by the Euro Bondholders to re-litigate an issue that has already been heard - - whether their current contract trumps their prior contract and the decisions of the United States judiciary. In these circumstances, the second declaration would be useless, not to mention abstract and ambiguous as you have already observed.

Respectfully submitted,

Anthony J. Costantini

AJC/gg

cc: Honorable Thomas P. Griesa (by hand)
Eric Schaffer, Reed Smith
Christopher Clark, Latham & Watkins

DM1\5151427.2

November 19, 2014
Page 5

    Carmine Boccuzzi, Cleary Gottlieb
    Robert Lash, Herzfeld & Rubin
    Edward A. Friedman, Friedman Kaplan Seiler & Adelman LLP
    Jake Hardy, Reynolds Porter Chamberlain LLP
    Tom Hibbert, Reynolds Porter Chamberlain LLP
    Andrew Denny, Allen & Overy
    Kate Dewire, Allen & Overy
    Daniel A. Pollack, McCarter & English, LLP